IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JACQUELYN HOBBY,

      Plaintiff,

v.

CUSTER COUNTY,
THE BOARD OF COUNTY COMMISSIONERS, CUSTER COUNTY,
TOM FLOWER,
KEVIN DAY,
BILL CANDA, and
BRADEN WILSON.

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Jacquelyn Hobby, by and through undersigned counsel, Rachel B. Maxam of the Law Office of Rachel B. Maxam, PLLC, states and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States.

2. This action for damages resulting from harassment, sex-based discrimination, retaliation, and constructive discharge is commenced pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et. seq. ("Title VII") and Colorado's Anti-Discrimination Act, C.R.S. § 24-34-402 et. seq. ("CADA").

3. Plaintiff's First Amendment claim is brought pursuant to 42 U.S.C. §1983.

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the District of Colorado because the incidents and resulting injuries to the Plaintiff giving rise to this action occurred in Custer County, Colorado.

6. On September 27, 2022, Plaintiff timely filed a charge with the Colorado Civil Rights Division (CCRD), Case No. R2300016783, which was cross-filed with the Equal Employment Opportunity Commission (EEOC), regarding the claims asserted herein: harassment, hostile work environment, discrimination, retaliation, and constructive discharge.

7. On July 13, 2023, the CCRD issued a letter of determination with a finding of "probable cause" on these claims.

8. On September 26, 2023, Mrs. Hobby received notice from the CCRD that the matter was being dismissed and of her "right to sue" within 90 days.

9. Plaintiff exhausted her administrative remedies.

10. Plaintiff timely filed this Complaint within 90 days of dismissal and notification of her right to sue.

## PARTIES

11. Plaintiff is a citizen of the United States and has been at all times relevant herein a resident of Colorado.  At all times relevant to this complaint, Mrs. Hobby was employed by Custer County located in Custer County, Colorado.

12. Custer County is a Colorado County with a principal address of 205 S 6th St, Westcliffe, CO 81252.

13. Defendant Board of County Commissioners of Custer County, Colorado ("BOCC") is a county body established under the laws of Colorado.

14. At the times relevant to these claims, Defendants Tom Flower ("Flower"), Kevin Day ("Day"), and Bill Canda ("Canda") were the County Commissioners for Custer County.

15. At the times relevant to these claims, Defendant Braden Wilson ("Wilson") was employed as the human resources director for Custer County.

16. At the times relevant to these claims, Defendants Flower, Day, Canda, and Wilson acted under the color of law.

## FACTUAL ALLEGATIONS

17. Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this complaint.

### Background

18. Mrs. Hobby is female and identifies as a woman.

19. At the times relevant to this Complaint, Mrs. Hobby was employed full-time with Custer County as the Director of Planning and Zoning, County Code Enforcement, and County Sanitarian, a position she had held since approximately August 2006.

20. Mrs. Hobby worked for Custer County, CO for over sixteen years.

21. In this position, she was responsible for processing and reviewing land use applications, and use permits, and investigating possible code violations, among other duties.

22. As a part of her job duties, she attended various department meetings and BOCC meetings where she presented reports of department activities for discussion and further action, as may be appropriate.

23. As a director, she was the head of a county department and was overseen by the BOCC who are, in effect, her supervisors.

24. At the times relevant to this Complaint in 2021 and 2022, the BOCC consisted of commissioners Flower, Day, and Canda.

25. Individual commissioners are assigned to be the main point of contact for specific department heads to facilitate the management of operations. At the times relevant to this Complaint, Day was Mrs. Hobby's point of contact.

**Harassment and Discrimination by Flower**

26. On or about May or June 2021, Mrs. Hobby complained to Wilson that Flower was harassing and bullying her because she was a woman.

27. Following this complaint, the Defendants took no action to discipline, correct, oversee, or otherwise change Flower's behavior.

28. In December 2021, Mrs. Hobby reported to Wilson and Day that she was being harassed by Flower.

29. On or about December 6, 2021, Flower stated to Mrs. Hobby that "women shouldn't be allowed to do certain things."

30. On or about December 6, 2021, Mrs. Hobby complained about Flower to Day, including that she had been excluded from County meetings that were a part of her job duties.

31. On December 7, 2021, fed up with Flower's behavior, Mrs. Hobby complained about Flower's recent behavior, as well as his past behavior with her and other women employees at a public BOCC meeting.

32. Mrs. Hobby stated that she was "tired of sitting in this position and letting one man [Flower] dictate how you treat the women in this building." "[There is] a series of four women who have quit, there's a problem going on but I don't care, I'm going to stand up

because the others did not."

33. She detailed several instances of Flower's inappropriate behavior directed toward her, asking "Is this because I'm a woman?"

34. She also described an incident on or about June 2019 in which Flowers stopped a BOCC meeting to pull her and the other commissioners (including current Commissioner Canda) aside into the stairwell and called her a "little fucker."

35. At this time, she had previously announced she was going to quit due to Flower's behavior but the community encouraged her to stay, which she did.

36. Multiple members of the public called for Flower's resignation (or for him to be recalled) with wide support from the audience.

37. Multiple members of the public spoke positively about Mrs. Hobby's job performance.

38. As a result of the December 7, 2021 meeting and Mrs. Hobby's complaints, Flowers was directed to take three remedial courses and took them between February 9-15, 2022.

39. Flower was also ordered not to have any contact with Mrs. Hobby unless HR was present and suspended him from certain job duties, including those involving Mrs. Hobby, for two months.

40. At a December 17, 2021 meeting, Commissioner Canda shared that Flower has created a greater issue than just with Hobby and several others felt it is a hostile work environment.

41. Commissioner Bill Canda contacted the other female employees whom Mrs. Hobby referred to as "quitting" because of Flower and found evidence of wrongdoing and that the women were fearful of retaliation.

42. Commissioner Canda reported what he uncovered to Wilson and expressed that there was

a problem with Flower's treatment of women. Wilson's response was to state that he could

not take Commissioner Canda's word for it and that he did not have time to investigate the

allegations.

43. On January 20, 2022, Wilson stated in an email to Commissioner Canda that, "there was a

complaint by Jackie Hobby about Tom Flower regarding gender discrimination…but there

was also a complaint by you [Commissioner Canda] that there is a hostile work

environment in the county building brought about by [Flower]."

44. The BOCC and Wilson took no further action to investigate or address the actions by

Flower involving other women.

45. The actions taken by the BOCC and HR  following the December 2021 complaints by Mrs.

Hobby failed to remediate or deter Flower from harassment and discrimination.

46. Between February and June 2022 Flower continued his campaign of harassment and

discrimination in County meetings.

47. Between February and June 2022, Mrs. Hobby repeatedly and continually complained to

Day and Wilson about Flower's harassment and discrimination, including stating that

Flower does not like women, that he was bullying and belittling her, and that his actions

were making her physically ill.

48. Mrs. Hobby reported these continuing problems to Day 10-15 times between February and

June 2022 and asked him to stop the abuse.

49. She also made repeated reports to Wilson, but Wilson refused to hear her complaints after

March 18, 2022.

50. The Defendants did nothing to investigate, discipline, correct, oversee, or otherwise change

Flower's behavior between February and June 2022.

51. Instead, Day told Mrs. Hobby that she should quit.

52. Due to the prohibition on Flower being able to have personal contact with Mrs. Hobby without HR present, he instead harassed her through another employee, including pressuring her to recant her allegations of discrimination/harassment.

53. Specifically, in a staff meeting on March 1, 2022, Flowers belittled her and later accused her of not doing her job. In fact, Mrs. Hobby had merely pointed out that Flower had not followed County procedure for appeals of land use applications and was exceeding his authority.

54. On March 16, 2022, Mrs. Hobby attended a BOCC meeting as a part of her job duties to discuss planning and zoning matters. Flowers continually bullied and belittled her.

55. Specifically, on March 18, 2022, Mrs. Hobby reported what had been happening in a meeting with Day and Wilson. She said that she was feeling more and more uncomfortable and that nothing was being done to stop it. She stated that Flower had not changed the behavior she complained of in December 2021, that he was "constantly after" her, and would not leave her alone.

56. However, the County did not take any corrective action. Instead, they suggested that she have her assistant, Kala Kitchen, go to meetings to do her job reports at the County meetings.

57. On March 21, 2022, Carol Vayhinger, a member of the Planning Commission filed a complaint with the County because she felt the March 16, 2022 incident was severe enough to speak out about Flower's harassing behavior involving Mrs. Hobby and questioned if

there was sex discrimination.

58. Mrs. Vayhinger requested that the County take action before "Flower has made [Mrs. Hobby's] life miserable enough that she quits" and asked, "What actions will be taken to protect our county employees."

59. Specifically, on May 9, 2022, Mrs. Hobby informed Day of Flower's harassment, that it was making her physically ill, and that she could not continue to do her job if this continued. Day suggested that Mrs. Hobby resign.

60. On June 14, 2022, Mrs. Hobby told Day that she could not take Flower's behavior anymore and that the County had not done anything about it and was not going to do anything about it.

61. Faced with never-ending harassment from Flower that the Defendants refused to address or correct and ongoing physical and emotional effects from the stress of working in this hostile environment, Mrs. Hobby had no choice but to quit.

62. On May 9, 2022, Mrs. Hobby submitted her resignation.

63. Mrs. Hobby was 60 years old at the time.

64. Mrs. Hobby had no desire to quit her employment of 16 years or retire early but felt she had no choice for her health and well-being and to end the abuse.

**Retaliation and Constructive Termination**

65. Instead of addressing the numerous complaints about Flower by Mrs. Hobby and other women, the Defendants instead went on the offensive to prop up Flower and defame, discredit, and ultimately suspend Mrs. Hobby in retaliation for her complaints of discrimination, harassment, and retaliation by Flower.

66. For 16 years, Mrs. Hobby did not have a single complaint submitted by any County official or employee nor did she have any history of disciplinary action.

67. Only after Mrs. Hobby repeatedly complained, first by going on record publicly to speak out about discrimination/harassment of herself and other women, did "complaints" by employees about Mrs. Hobby suddenly surface.

68. However, the "complaints" submitted do not support that there were any legitimate workplace issues, hostility, or intimidation involving other employees for which there would be grounds for the drastic remedy of suspension.

69. These "complaints" are not about Mrs. Hobby's job performance or tangible abusive behavior in the performance of her job duties but are rather about petty personal issues, perceived personal slights, conflict and tension created by the employee statement that Flower had not created a hostile work environment, and reflect a general atmosphere of distrust among employees resulting from the events implicating Flower's behavior.

70. These "complaints" were simply a pretextual basis for suspending Mrs. Hobby.

71. The timing of these "complaints" about Mrs. Hobby is instructive.

72. Multiple complaints to HR only surfaced between March 28, 2022 and June 13, 2022 after 16 years of employment with the County absent any previous complaints or disciplinary action against Mrs. Hobby.

73. These complaints created "reasons" for the Defendants to be able to retaliate against Mrs. Hobby and suspend her to punish her for her complaints of harassment and discrimination.

74. After Mrs. Vayhinger complained on March 21, 2022, two complaints were submitted on March 28, 2022 by Karla Kitchen and April 21, 2022 by Dorothy Carsten, the BOCC

secretary who would later take over Mrs. Hobby's job.

75. On May 19, 2022, Mrs. Hobby's resignation was announced to the public.

76. On May 31, 2022, during a BOCC public hearing, members of the public called for Flower's resignation. A member of the public attempted to bring up the hostile work environment that Flower had created but was stopped from speaking by the BOCC.

77. At the same time on or about early June 2022, Day spearheaded the circulation of a statement to only some employees of the County for signature to discredit Mrs. Hobby's and others' complaints of harassment/hostile work environment.

78. The statement was signed by 22 persons (of the some 90 County employees) and included signatures by Wilson, Maloney, Roth, and Carsten (the same employees who submitted "complaints" about Mrs. Hobby).

79. The statement said, in relevant part:

> The undersigned employees of the Custer County Courthouse wish to go on record as saying that Flower has not turned the Courthouse into a hostile workplace. Flower has not been hostile to any of us, and we do not appreciate the public speaking for the other offices in the courthouse, nor do we appreciate hearing that the building is a hostile workplace… Again, the purpose of this letter is to put these ridiculous rumors to bed, and to try to peacefully move on with conducting the business of county government.

80. The statement was not circulated to all employees, including those who would oppose its contents, and conspicuously, no tally was taken for those who opposed it.

81. Mrs. Vayhinger's complaint, Mrs. Hobby's complaints, and the complaints of other women who quit were not addressed and brought to the attention of the public.

82. The statement was read at a public BOCC meeting by Wilson on June 7, 2022.

83. In participating in the creation, circulation, signing, and/or reading of the employee statement, Commissioners and Wilson engaged in a coordinated effort to discredit Mrs. Hobby's allegations, smear her character, damage her reputation, and for other employees to do the same.

84. Following the announcement of Mrs. Hobby's resignation and the public hearing reading of the employee statement, two more "complaints" against Mrs. Hobby were submitted by Assessor and Appraiser Kristen Maloney and Vernon Roth on June 11 and June 13, 2022, respectively.

85. The fact that the only "complaints" against Mrs. Hobby only suddenly surfaced after Mrs. Hobby refused to desist from making complaints or quit and in the span of less than a week to two months before she was terminated highly suggests that the submission of these complaints was encouraged by one or more Commissioners and/or Wilson to provide a basis for suspending her.

86. On June 17, 2022, the BOCC held a special meeting to address the "complaints" about Mrs. Hobby.

87. The meeting agenda only stated that "new business" would be "consideration of workplace environment issues" and "consideration of FMLA request" to obscure from the public that the meeting was actually solely about Mrs. Hobby.

88. The agenda also stated that "no public comment allowed."

89. Mrs. Hobby was not notified of the June 17, 2022 special meeting about the "complaints" about her. Notice of the meeting was physically posted in the County building no sooner than the day before the meeting if it was posted all.

90. The notice was only posted online one day before the meeting.

91. Mrs. Hobby only learned that the meeting was occurring because she logged online at her house (which is far from the location of the meeting) while it was already happening via Zoom. The Zoom meeting was closed to any participation by online viewers, so Mrs. Hobby could not participate.

92. At the meeting, Day stated only that there was an "issue" with a "county employee" (referring to Mrs. Hobby).

93. The posting and conducting of the special meeting were calculated to prevent Mrs. Hobby and the public from participating.

94. He only vaguely stated that the issue was "a serious condition did exist regarding the emotional well-being of the other employees and even with the safety of some employees" for which there had been "complaints." He stated that no public comment would be taken about the issues (concerning Mrs. Hobby).

95. There was no discussion in the public meeting of who the complaints had been made against, who made them, or the nature or legitimacy of the complaints.

96. To discuss the issues (Mrs. Hobby), the BOCC went into an executive session, which was closed to the public. The BOCC discussed Mrs. Hobby for approximately 1.3 hours.

97. Despite the lack of evidence substantiating that Mrs. Hobby has engaged in wrongful conduct or that her job performance was unsatisfactory, the BOCC returned to the regular

public session and immediately voted unanimously to suspend Mrs. Hobby absent any

discussion of the evidence taken or the reason(s) for their decision.

98. The only action taken by the BOCC in response to these complaints was to review them

and discuss them with Wilson. Before suspending Mrs. Hobby, they did not investigate

these "complaints," discuss them with the complainants or Mrs. Hobby, actively refused to

disclose or discuss them with Mrs. Hobby when she asked, and took no other action in

response to the complaints despite two complaints being months old.

99. Such executive sessions are recorded and can be voluntarily disclosed by the County.

However, the County has not disclosed this executive session in which they discussed the

"complaints" against Mrs. Hobby and their reason(s) for suspending Mrs. Hobby.

100.    Instead of taking action against Flower, who retained full enjoyment of his powers

and duties as a County Commissioner, the BOCC punished Mrs. Hobby as a resolution to

the issue.

101.    On July 19, 2022, the County publicly announced that they were hiring Ms. Carsten,

one of the people who had filed a "complaint" against Mrs. Hobby, to replace Mrs. Hobby.

102.    On or about the summer of 2022, Flower was overhead at a restaurant saying,

"Women are worthless."

103.    Mrs. Hobby's employment with the County officially ended on August 22, 2022,

the effective date of her resignation.

104.    In 2022, beginning on or about July 2022, the citizens of Custer County petitioned

for a recall of Flower in the fall election because he was found to have violated the state

ethics rules, created a hostile work environment for employees, and his "continual

harassment" of Mrs. Hobby.

105.    On or about February 27, 2023, a County employee filed a complaint concerning Flower. She said that Flower is hateful towards women, a bully, and she was fearful of losing her job.

106.    On August 8, 2023, Flower was recalled by a vote of the citizens of Custer County and Lucas Epps was elected as his replacement.

**Damages**

107.    As a result of the Defendants' actions described further herein in harassing and discriminating against her, ignoring and minimizing her complaints, suggesting she quit, retaliating against her, suspending her, and forcing her out of her job, Mrs. Hobby has experienced pain and suffering, physical and emotional suffering and distress, degradation, humiliation, anger, stress, anguish, frustration, and damage to her reputation.

108.    The events described herein interfered with Mrs. Hobby's emotional and physical well-being in and outside of work.

109.    Mrs. Hobby suffered loss of employment and income, loss of employment opportunities, and physical illness that resulted in incurring medical expenses.

110.    Flower's harassment and discrimination against Mrs. Hobby caused her great distress and stress to the point it made her physically ill. She had to take time off work for doctor's appointments to address her health issues.

111.    She ultimately needed to apply for a leave of absence under the FMLA in June 2022 due to the severity of her condition.

112.    The Defendants' failure to act to remedy Flower's behavior, Wilson's refusal to

take her complaints, and suggestions that she quit only further exacerbated her distress and consternation.

113.        Mrs. Hobby was publicly discredited and embarrassed for making complaints of harassment and discrimination by the employee statement.

114.        It caused Mrs. Hobby great distress that the Defendants not only ignored and minimized her complaints and suggested that she quit instead, but even more so that the Defendants took affirmative actions to discredit her and deny and cover up Flower's wrongdoing to the public through the employee statement.

115.        As a result of the hostile work environment created by Flower and the Defendants' inaction to remedy the problems, Mrs. Hobby felt she had no choice but to resign from her employment.

116.        The Defendants' retaliation and suspension of her employment only further added to her injuries.

117.        As a result of the Defendants' retaliation, Mrs. Hobby has a record of having been suspended for trumped-up workplace "complaints" against her.

118.        Mrs. Hobby was embarrassed and humiliated by having a record of suspension.

119.        Mrs. Hobby has not been employed since being suspended.

120.        After being suspended, Mrs. Hobby continued to suffer from physical illness brought on by the stress of these events and received treatment for her illness.

## FIRST CLAIM FOR RELIEF

***Sexed-Based Harassment and Hostile Work Environment in violation of Title VII and CADA***
***(Against BOCC, Flower, Day, Canda, and Wilson)***

121.        Plaintiff hereby incorporates by reference, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

122.    Mrs. Hobby is female – a member of a protected class.

123.    Mrs. Hobby was subjected to adverse treatment by being repeatedly harassed based on her sex by Flower as further described in the factual allegations above.

124.    The treatment was unwanted and unwelcome by Mrs. Hobby, which she voiced to Custer County officials repeatedly and in public as further described in the factual allegations above.

125.    The treatment was subjectively and objectively unreasonable. Mrs. Hobby found the harassment to be intolerable and any reasonable person would find the conditions intolerable.

126.    The treatment was severe or pervasive, particularly because it was treatment at the hands of a supervisor and elected official in a position of power and control and because the abuse occurred repeatedly over months as described in the factual allegations above.

127.    The Defendants were repeatedly put on notice about Flower's behavior through complaints to them by Mrs. Hobby and Carol Vayhinger beginning in 2021 and continuing to June 2022.

128.    The treatment had the purpose and effect of creating a hostile, intimidating, and offensive work environment as further described in the factual allegations above.

129.    The Defendants not only ignored this hostile work environment and permitted it to occur but it was outright denied and covered up by the County Commissioners and Wilson.

130.    Any reasonable woman would find it highly offensive for her complaints of harassment and discrimination to be invalidated and discredited by her employers and

public officials through public presentation of the statement by employees that her complaints and the complaints of other women were meritless and just unfounded rumors.

131.    The Defendants failed to take reasonable steps to address the misconduct and did not discipline, punish, correct, or otherwise increase oversight or supervision of Flower after the misconduct continued to occur in 2022.

132.    Instead, Mrs. Hobby was told she should quit.

133.    The above-described harassment created an intimidating, oppressive, hostile, and offensive work environment and negatively impacted Mrs. Hobby's emotional and physical well-being in and outside of work causing her serious physical and emotional harm.

134.    As a direct and proximate result of Defendant's conduct, Plaintiff has experienced physical illness, pain and suffering, physical and emotional suffering and distress, degradation, humiliation, anger, stress, anguish, frustration, damage to her reputation, and incurred medical expenses.

## SECOND CLAIM FOR RELIEF

### *Disparate Treatment/Discrimination in Terms and Conditions of Employment in violation of Title VII and CADA*
### *(Against BOCC, Flower, Day, Canda, and Wilson)*

135.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

136.    Mrs. Hobby is female – a member of a protected class.

137.     Mrs. Hobby was qualified for and satisfactorily performed her job as Director of Planning and Zoning, County Code Enforcement, and County Sanitarian as further described in the factual allegations above.

138.     Mrs. Hobby was subjected to adverse terms and conditions of employment when Flower inappropriately and unprofessionally criticized her work product and of not doing her job, improperly asserted himself into her dealings as a director, particularly when oversight of Mrs. Hobby fell under the purview of Day and not Flower and when Flower continually verbally berated, bullied, and belittled her as further described in the factual allegations above.

139.     Flower's behavior towards Mrs. Hobby was based on an animus towards women and a belief that "women shouldn't be allowed to do certain things."

140.     The actions of Flower as described herein, demonstrate that discrimination was a motivating factor in Flower's actions.

141.     Similarly situated employees not of Mrs. Hobby's class were not subjected to such improper, intrusive oversight, and destructive criticism and harassment.

142.     As such, these circumstances, as further described in the factual allegations above, give rise to an inference of unlawful discrimination.

143.     Further, the circumstances support that Mrs. Hobby's suspension was discriminatory.

144.     The Defendants did nothing to investigate, discipline, correct, oversee, or otherwise change Flower's behavior between February and June 2022.

145.     After a period of time, Wilson refused to hear Mrs. Hobby's complaints.

146.    Despite the lack of evidence substantiating that Mrs. Hobby had engaged in wrongdoing in the workplace warranting suspension, the BOCC proceeded to suspend her while permitting Flower to retain full enjoyment of his powers and duties as a County Commissioner.

147.    After the initial efforts to remedy Flower's harassment were unsuccessful, instead of making further attempts to remedy the discrimination, the BOCC suspended Mrs. Hobby and punished her instead of the wrongdoer, Flower.

148.    The above-described discrimination negatively impacted Mrs. Hobby's emotional and physical well-being in and outside of work and caused her serious physical and emotional harm.

149.    As a direct and proximate result of Defendant's conduct, Plaintiff has experienced physical illness, pain and suffering, physical and emotional suffering and distress, degradation, humiliation, anger, stress, anguish, frustration, damage to her reputation, and incurred medical expenses.

## **THIRD CLAIM FOR RELIEF**

### *Retaliation in violation of Title VII and CADA*
### *(Against BOCC, Flower, Day, Canda, and Wilson)*

150.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

151.    Mrs. Hobby engaged in protected activity by opposing Flower's unlawful harassment and discrimination against her, as well as speaking up against his harassment of other women.

152.     She voiced this opposition directly to the individual members of the BOCC, Wilson, and at a public hearing.

153.     Mrs. Hobby participated in a protected activity in making complaints of harassment and discrimination to the Commissioners and Wilson.

154.     Mrs. Hobby was subjected to numerous and pervasive adverse employment actions because of her complaints and opposition to unlawful employment practices.

155.     Mrs. Hobby was subjected to adverse terms and conditions of employment when Flower used another employee to pressure her to recant her allegations of harassment and discrimination, a protected activity.

156.     When pressure to recant was unsuccessful, Mrs. Hobby was subjected to adverse terms and conditions of employment when Flower inappropriately and unprofessionally criticized her work product and that she was not doing her job, improperly asserted himself into her dealings as a director, and continually verbally berated, bullied, and belittled her as further described in the factual allegations above in response to her engaging in protected activity and refusing to recant her allegations.

157.     The factual allegations herein support that Flower was retaliating against Mrs. Hoppy to get her to quit, which she had threatened before and eventually did again under the pressure of unending harassment.

158.     Mrs. Hobby was subjected to adverse terms and conditions of employment in the form of co-worker hostility and retaliatory harassment. *See, e.g., Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) (the Tenth Circuit liberally defines the

phrase "adverse employment action," co-worker hostility or retaliatory harassment may constitute "adverse employment action" for purposes of a retaliation claim).

159.    Mrs. Hobby was subjected to adverse terms and conditions of employment when Day spearheaded the circulation of a statement to only some employees of the County for signature and the Commissioners had the statement read at a public hearing by Wilson.

160.    The facts alleged herein support that the Commissioners and Wilson engaged in a coordinated effort to discredit Mrs. Hobby's allegations, smear her character, damage her reputation, and encouraged other employees to do the same.

161.    Mrs. Hobby was subjected to adverse terms and conditions of employment in the form of trumped-up "complaints" only being filed against her after she engaged in protective activity.

162.    The close temporal proximity to her complaints of harassment and discrimination and her resulting resignation to the submission of the "complaints" highly suggests that the "complaints" were manufactured and/or trumped up.

163.    The facts alleged herein support that one or more Commissioners and/or Wilson encouraged the filing of "complaints" to provide a basis for suspending Mrs. Hobby and discrediting her allegations, particularly given the fact that she had no other complaints in 16 years.

164.    To the extent that one or more of the Commissioners or Wilson did not participate directly in a coordinated effort in the creation of the employee statement, encouraging others to sign the statement, or the submission of trumped-up employee complaints, they

knew about these actions and acquiesced in it in such a manner as to condone and encourage the co-workers' actions.

165.    Mrs. Hobby was subjected to adverse terms and conditions of employment when she was suspended without just cause by a unanimous vote of the BOCC to punish her for engaging in protected activity.

166.    Mrs. Hobby's suspension occurred in close temporal proximity to her complaints and resignation which highly suggests that Mrs. Hobby's suspension was retaliatory and calculated to discredit her allegations.

167.    These adverse employment actions would not have occurred but for persistence in complaining about Flower and opposing harassment and discrimination.

168.    These adverse actions would not have occurred if Mrs. Hobby had simply kept quiet, not aired the County's dirty laundry to the public, created a stir in the community prompting calls for Flower's resignation/recall, and/or quit as was repeatedly suggested to her.

169.    A reasonable person would have found these actions materially adverse because these actions would dissuade a reasonable person from engaging in the protected activities of complaining about, opposing, and speaking out against harassment and discrimination.

170.    The above-described retaliation negatively impacted Mrs. Hobby's emotional and physical well-being in and outside of work and caused her serious physical and emotional harm.

171.    As a direct and proximate result of Defendants' conduct, Plaintiff has experienced physical illness, pain and suffering, physical and emotional suffering and distress,

degradation, humiliation, anger, stress, anguish, frustration, damage to her reputation, lost

employment and income, lost employment opportunities, and incurred medical expenses.

## FOURTH CLAIM FOR RELIEF

### *Constructive Discharge in violation of Title VII and CADA*
### *(Against BOCC, Flower, Day, and Canda)*

172.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.

173.    Plaintiff has established a harassment/hostile work environment claim as described

in the First Claim for Relief.

174.    Flower, the other Commissioners, and Wilson took deliberate actions that made or

allowed working conditions to become so difficult or intolerable that a reasonable person

under the same or similar circumstances would have felt compelled to resign.

175.    The other Commissioners and Wilson allowed Mrs. Hobby's working conditions

to become intolerable due to continued, unremedied harassment from Flower, which the

Commissioners and Wilson endorsed through inaction in failing to remedy the continued

harassment, as well as through the employee statement that Flower was not creating a

hostile work environment.

176.    In failing to remedy Flower's harassment and discrimination, the County and

BOCC effectively sanctioned continued harassment and discrimination in the workplace.

Officials/employees could be confident that complaints of harassment and discrimination

would be ignored by the County, actively discredited and/or covered up by the County/its

officials/employees, they would not have to suffer reprobation or adverse consequences

other than a slap on the wrist, and the accuser would instead be punished.

177.    Mrs. Hobby resigned as a result of these actions.

178.    The working conditions were so difficult and intolerable that they affected Mrs.
Hobby's emotional and physical well-being in and outside of work and caused her serious
physical and emotional harm.

179.    As a direct and proximate result of Defendants' conduct, Plaintiff has experienced
pain and suffering, physical and emotional suffering and distress, degradation, humiliation,
anger, stress, anguish, frustration, lost employment and income, and incurred medical
expenses.

### FIFTH CLAIM FOR RELIEF

*First Amendment Retaliation*
*(Against Defendants Custer County, BOCC, Flower, Day, Canda, and Wilson)*

180.    Plaintiff hereby incorporates by reference, as though fully set forth herein, each and
every allegation set forth in the preceding paragraphs of this Complaint.

181.    Mrs. Hobby engaged in a constitutionally protected activity by speaking out about
harassment and discrimination in the County workplace, including at a public meeting.

182.    Government employees do not surrender their First Amendment rights by reason
of their employment. The First Amendment protects a public employee's right to speak as
a citizen in matters of public concern.

183.    Defendants Custer County, Flower, Day, Canda, and Wilson retaliated against Mrs.
Hobby, *inter alia*, by harassing her, verbally abusing her, refusing to take her complaints,
encouraging her to quit, initiating and circulating the employee statement, and suspending
her to punish her for her speech.

184.    The actions of Defendants caused Mrs. Hobby to suffer an injury that would chill a

person of ordinary firmness from continuing to engage in that protected activity.

185.    The actions of Defendants would make any employee fearful of being suspended, losing their employment, or other adverse consequences in response to speaking out and opposing the actions of government officials.

186.    The Defendants' adverse actions were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

187.    The Defendants' adverse actions directly correspond with Mrs. Hobby's continued complaints about Flower and her resignation announcement.

188.    The Defendants' actions were calculated to deter Mrs. Hobby, as well as others, from speaking publicly about the continuing issues with Flower.

189.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including violation of her First Amendment constitutional rights.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendant:

a.    For compensatory damages;

b.    Punitive damages;

c.    For pre and post-judgment interest as allowed by law, costs, expert witness fees, reasonable attorney fees pursuant to 42 U.S.C. § 1988, or as otherwise allowed by law; and

d.    For any other and further relief that this Court shall deem just and proper.

**PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Dated and submitted this 6th day of December, 2023.

LAW OFFICE OF RACHEL B. MAXAM, PLLC

*/s/ Rachel B. Maxam* _____
Rachel B. Maxam, #47711
Law Office of Rachel B. Maxam, PLLC
405 Main St.
Westcliffe, CO 81252
Phone: (720)-526-2928
Fax: (720)-894-1471
Email: rachel@maxamlawfirm.com

*Attorney for Plaintiff*